ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 3 0 2012

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA,
Atlanta Division

| | |
|---|---|
| MELODY GOLD,<br>MICHAEL J. GOLD,<br>Plaintiffs<br><br>v.<br><br>OCWEN LOAN SERVICING. LLC,<br>Defendant | CIVIL ACTION<br><br>FILE NO: _____<br><br>**1: 12-CV-3056**<br><br>JURY TRIAL DEMANDED |

PLAINTIFFS' VERIFIED COMPLAINT

COMES NOW, Plaintiffs Melody Gold,[1] and Michael J. Gold,[2] by and through their Legal Counsel, and respectfully file ***Plaintiffs' Verified Complaint with Jury Trial Demanded***, and shows this Court the following pertinent facts:

JURISDICTION AND VENUE

---

[1] "Mrs. Gold"

[2] "Mr. Gold" or collectively, "The Golds" or "Plaintiffs"

1.     This action arises, ***inter alia***, out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 ***et seq***. ("     FDCPA"), and the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 ***et seq***.

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 , because the district courts shall have original jurisdiction of all civil actions arising under the laws of the United States; and concurrent jurisdiction pursuant to 28 U.S.C. §1367.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district; and because the claims are centered around real property that is within this judicial district.

PARTIES

4.     Plaintiffs Melody and Michael Gold are the owners of the property located at 3409 Elm Creek Drive, in Marietta, GA  30064.  At all times relevant, the Golds have been "consumers" within the meaning of FDCPA and FCRA.

5.     Defendant Ocwen Loan Servicing, LLC has been a foreign, Limited Liability Company, formed under the laws of Delaware; with their principal place of business located at 1661 Worthington Road, Ste 100, in West Palm

Beach, Florida  33409.  The Defendant may be served with Summons and Complaint, through their Registered Agent:  Corporation Service Company, 40 Technology Pkwy South, #300, in Norcross, GA  30092, in Gwinnett County.

FACTUAL BACKGROUND

6.      Plaintiffs bought the property for their principal residence, located at 3409 Elm Creek Drive, Marietta, GA 30064, on August 26, 2005 through H&R Block Mortgage Corporation and Recorded in Cobb County, Georgia Records on Sept. 13, 2005 at Deed Book 14217, Page 4790.

7.      Allegedly, there was an Assignment of Mortgage/Security Deed January 13, 2006 in which H&R Block Mortgage Corporation, Assigned to Option One Mortgage Corporation, all interests, all liens, and any other rights that H&R Block Mortgage Corporation had had, Recorded in Cobb County, Georgia Records at Deed Book 14283, Page 3193 (***Plaintiff's Exhibit #1***).

8.      There was also a cancellation of Deed to Secure Debt (Cancellation of Security Deed), and the property paid in full on January 15, 2007, Recorded in Cobb County, Georgia Records at Deed Book 14453, Page 1091 on February 16, 2007 (***Plaintiff's Exhibit #2***).

9.    There has never been an Assignment recorded showing in either Cobb County, Georgia Records, or at GSCCCA online, other than the one in ¶ 7.

10.    Ocwen Loan Servicing, LLC ("Ocwen") alleges to have received loan servicing rights for the loan on Plaintiffs' residential property located at 3409 Elm Creek Drive, in Marietta, GA 30064, during November 2009.

11.    There is no Assignment showing in the Cobb County, Georgia Records, and Plaintiffs never received any communication from the previous servicer relaying such information (***Plaintiff's Exhibit #3***).

12.    When Ocwen began sending Plaintiffs statements, Plaintiffs paid the statements.

13.    Plaintiffs have never defaulted on the loan.

### A.   *The Loan Fiasco Created by Ocwen*

14.    July 2011, Plaintiffs loan reflected a principal balance due of $200,729.88.

15.    August 2011, Plaintiffs received a statement that showed a sudden drop in the principal amount owed, to $176,715.10, down $ 24,014.78 from the previous month (***Plaintiff's Exhibit #4***).

16.    On August 17, 2011 Plaintiffs received six different statements stating that Plaintiffs had made a payment of $1,281.67, when they had not made

any payment in that amount.

17.    On August 17, 2011 Plaintiffs also received a statement that they had made a payment in the amount of $55.97, when they did not make such payment.

18.    Plaintiffs contacted Ocwen about the numerous alleged payments to their account, and were told that Ocwen would look into it.

### B. *IRS 1099-C Alleged $39,543.91 Cancelled Off Debt*

19.    During the month of October 2011 Plaintiffs received a 1099-C "Cancellation of debt" form*, Plaintiff's Exhibit #5*, sent to the Internal Revenue Service ("IRS") which reflected that Ocwen had cancelled $39,534.91 off of their debt; which was simply not true.

20.    After receiving the 1099-C, Plaintiffs, who had not heard anything about all the alleged payments during August – 2011, contacted Ocwen again, to find out what was going on.

21.    Finally in May 2012, Plaintiffs received communication and statement in response to their inquiries, *Plaintiff's Exhibit #6*; the statement reflected an alleged loan modification on August 16, 2011, which did not happen; Ocwen admitted the 1099-C was an error and would be corrected to $0.00; and Ocwen incorrectly claimed that that Plaintiffs had

not made the December 2011 payment.

### C.  *False Allegations of Default*

22.    March 2, 2012 Plaintiffs received "Notice of Default" stating the principal amount owed was $204,850.00, and Ocwen incorrectly stated that Plaintiffs owed a payment of $4,118.73*, Plaintiff's Exhibit #7*. Plaintiffs had not defaulted on their loan. March 6, 2012 letter advising of Loan Modification of 8/10/11, did not occur, please see *Plaintiff's Exhibit #8*.

23.    March 23, 2012, Plaintiffs received a letter from Ocwen stating that the Research Dept. would respond to Plaintiffs within twenty (20) days,

( *Plaintiff's Exhibit #9)*.    Plaintiffs did not receive anything from a Research Dept.

24.    On April 11, 2012 Plaintiffs received statements, *Plaintiff's Exhibit #10*, alleging the following untrue information:

  a) Plaintiffs owed $5,437.00 including a past due amount of $4,118.73.
  b) Plaintiffs had made a payment in the amount of $1,569.12.
  c) On March 01, 2012, Plaintiffs had made nineteen (19) payments in the amount of $1,137.57.
  d)  Plaintiffs had made a payment in the amount of $1,137.57 of April 10, 2012.

25.     None of the alleged transactions in the April 11, 2012 statements, Ex.F
had taken place.

26.     The two letters May 10 and May 15, 2012 (***Plaintiff's Exhibit #11
and #12***), were likewise incorrect. One letter stated that there had been a
loan modification started by the previous servicer, and completed on
August 16, 2011; the other letter gave an alleged breakdown of charges to
the loan during the May 05, 2010 loan modification:

| | |
|---|---|
| Interest: | $3,306.59 |
| Late Fees: | $ 335.85 |
| Projected Property Inspection Fee | $   10.50 |
| Property Inspection Fee | $  21.00 |
| Property Valuation Suspense | $ 117.00 |
| Certified Mail Cost | $  64.80 |
| Deferred Principal Balance | $4,113.00 |
| Escrow Advance | $ 331.46 |
| Additional Late Charge | $   55.98 |
| Escrow Deposit | $  821.82 |
| Suspense (partial payment) | $   56.66 |
| Down Payment | $1,137.57 |
| | |
| Total Balance after Modification | $206,816.32 |

The figures supplied were incorrect.

27.     On May 4, 2012, Plaintiffs received a letter assigning to Plaintiffs a
"relationship manager" of Sumen Mittal to walk them through finding an

alternative to foreclosure, ***Plaintiff's Exhibit #13,*** Plaintiffs were never in foreclosure, are not in default and not behind on their payments -- and no one contacted them.

### D.  *Evidence of Ocwen's Haphazard Accounting Practices*

*28.*    May 10, 2012 Plaintiffs received two letters, one outlining options available in regard to their "delinquent loan" *(Exhibit #6)*, although their loan was not delinquent; the second was a Payment Reconciliation (which contains 9  pages) showing that on August 16th a payment in the amount of $44,272.20 had been made, then reversed, a payment for $22,088.14 was made on August 16th, a Suspense payment of $7,685.99 was showing, six (6) payments in the amount of $1,271.67 had been made on August 16th; seven (7) reversal in the amount of $1,271.67 had taken place on March 01, 2012; a principal payment in the amount of $22,088.12 had been reversed on March 01, 2012; fifteen (15) payments in the amount of $1,137.58 had been reversed on March 01, 2012; one payment of $1,569.12 had been recorded on March 01, 2012; and seventeen (17) payments of $1,137.57 were showing for March 01, 2012; ***Plaintiff's Exhibit #14***.

29.    The monthly payment statement received on May 14, 2012, ***Plaintiff's Exhibit #15***, showed Plaintiffs' loan balance was in the

8

amount of $198,088.80, but reflected a past due amount of $4,550.28; Plaintiffs have never had or owed a past due amount.

30.    Plaintiffs received a "Notice of Default" on May 15, 2012, ***Plaintiff's Exhibit #12***, the documents alleged the same amounts from the March "Notice of Default", the loan amount at $204,850.00, with the alleged past due amount of $4,356.60.

31.    A copy of Ocwen's June 08, 2012 letter sent to the Governor's Office of Consumer Protection ("GOCP") was received by Plaintiffs; in the letter, Ocwen apologized for "inadvertently" processing a loan modification, and continued to maintain that Plaintiffs were past due on their loan, and that Ocwen would correct the derogatory reports to the credit agencies by June 16, 2012, which Ocwen has not done*, please see **Plaintiff's Exhibit #16.** The Plaintiffs credit reports have continued to reflect inaccuracies and false information originating from Ocwen.

32.    June 14, 2012 Plaintiffs received a "Payoff Quote", ***Exhibit #17***, the alleged amount of payoff was $200,157.64.

33.    June 16, 2012 two letters, and a Reconciliation Packet from Owen were delivered to Plaintiffs, one letter Ocwen stated that they are unable to provide Plaintiffs with the Original loan documents, that there is not a

9

single investor, but is one of many in a securitized investment trust called Morgan Stanley ABS Capital, Inc., **Plaintiff's Exhibit #18**; the second letter stated that Ocwen would respond to Plaintiffs' inquiries within twenty days, **Plaintiff's Exhibit #19**.

34.    Plaintiffs have never received the response to their inquiries.

35.    The June 16th Reconciliation Packet showed that on August 16, 2011 eight (8) payments had been made in the amount of $1,271.67; one (1) payment on August 16, 2011 made for $22,088.14; March 01, 2012 seven (7) reversals in the amount of $1,271.67; one (1) reversal of $6,414.32; Suspense Payment reversal $7,688.99 on March 01, 2012; Principal payment reversal of $22,088.14; Reversal of fifteen (15) payments in the amount of $ 1,137.58 March 01, 2012; Eighteen (18) payments of $1,137.58 paid on March 01, 2012; Transaction History Fees 03/06/2012 - $5.00; Property Valuation Expense:  03/12/2012 - $117.00; Property Inspection Fees:  03/15/2012 - $10.50, **"Plaintiff's Exhibit #19**.

36.    Plaintiffs received yet another "Payoff Quote" on June 17, 2012 **"Exhibit # 20"**, this one showed $200,162.66, with the numerous extra fees as shown in the earlier breakdown of fees.

37.    On June 17, 2012 Plaintiffs received a letter from Ocwen for payment

10

reconciliation history, which shows seventeen (17) payments made on March 01, 2012, as well as double Property Inspection Fees billed March 15 and May 3, for $10.50 each; a Property Valuation Expense charge to the account on March 12; three late charge assessments of $46.67 each on May 3, 2012, none of which had any reason to be added to the account *"Plaintiff's Exhibit 19"*.

38.   July 5, 2012 Plaintiffs received Ocwen's monthly statement showing $4,550.28 in past due amounts, and a current loan balance of $197,192.30 *"Plaintiff's Exhibit21"*; Plaintiffs maintain that they have never owed for late fees, as they have never been late.

39.   A letter from Ocwen July 10, 2012, states that according to RESPA, Ocwen was afforded an additional fifteen (15) days, longer than the 30 days, in which to respond to Plaintiffs' request; Ocwen knows that is not true, *"Plaintiff's Exhibit 22"*; the second letter for that day, stated that Ocwen would respond  within twenty (20) days; that was the third such letter. Ocwen has falsely represented the RESPA law to the Plaintiffs in an effort to obtain payments on the debt.

   **E.   *Plaintiffs Have Faithfully Paid Their Loan On Time Every Month***

40.    Plaintiffs, have never been behind on their home loan, they may have encountered some stressful moments raising six children with the bad shape the economy is in, but have never fallen behind, of that fact Plaintiff's have been very proud.

41.    Plaintiff recently counted the number of discrepancies on their account, the total number was Two Hundred Ten (210); the errors showed countless payment credits and reversals; every single on of these discrepancies are without merit, each is a fabrication.

42.    Plaintiffs have attempted to work with Ocwen, to no avail, matters only got worse.  Plaintiff's believe they are the brunt of a very bad joke, or a computer program that has run amok.

43.    Plaintiffs sought assistance through GOCP, which Ocwen made numerous misrepresentations to cover up these errors.

44.    Ocwen falls within the guidelines of 28 U.S.C.

45.    Before Ocwen allegedly was assigned servicing rights, Plaintiffs never received a notice of late payment.

46.    It is Plaintiffs belief that the loan was never assigned, sold, or transferred to Ocwen, and if there was, it was never recorded in the Cobb County, Georgia Records.

47. The paper trail for Plaintiffs' property ends cold with the cancellation of Deed to Secure Debt, and Plaintiffs, of the many times they have requested proof from Ocwen, have never received any indication, that they hold any loan and/or servicing rights with respect to any loan transaction involving the Plaintiffs. No documentation of a transfer to any other entity exists.

48. Plaintiffs sent to Ocwen more than once, a Qualified Written Request letter, attempting to get answers about the loan; neither letter has been responded to, except to say that they planned to respond.

49. The more the Golds inquired into the loan and accounting for the loan, the more documents Plaintiffs were sent showing that there is no possible way that a legal accounting could be made of their account.

50. Ocwen has repeatedly made false representations about the Gold's loan.

51. Ocwen made threats to Plaintiffs that they legally could not make, including, foreclosure, and misrepresenting facts about the loan, so that Plaintiffs could never determine the true "secured creditor".

52. The proof of such misrepresentation, and haphazard record keeping, is shown by the Exhibits attached hereto.

13

53.    Ocwen is a debt collector as defined in 15 U.S.C. §1692a(6), which defines a debt collector as someone who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

54.    Plaintiffs allege that Ocwen was attempting to collect a debt, although no debt was owed.

## COUNT ONE
### (Violations of Federal Fair Debt Collection Practices Act, 15 U.S.C. §1692(e))

55.    Plaintiffs incorporate by reference any or all of the preceding paragraphs as needed, and further allege as follows:

56.    Ocwen is a debt collector under the guidelines of 15 U.S.C. §1692(e) for purposes of Federal Fair Debt Collection Practices Act.

57.    Plaintiffs are debtors pursuant to  the guidelines of 15 U.S.C. §1692(e) for purposes of Federal Fair Debt Collection Practices Act.

58.    Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..."

including the "false representation of ...the character, amount or legal status of any debt...and the threat to take any action that cannot legally be taken..." (15 U.S.C. §1692(e)).

59. Without limiting the numerous and repeated violations of the FDCPA, Ocwen violated the FDCPA in the non-exclusive ways:

a. Ocwen violated the FDCPA by the use of false, deceptive, or misleading representations or means in connection with the collection of debt allegedly owed by the Plaintiffs

b. Such conduct constitutes a false representation of the character, amount, or legal status of any debt, pursuant to 15 U.S.C. §16922(2)(A).

c. The conduct of Ocwen further constitutes a threat to take action that cannot legally be taken, or that is not intended to be taken, pursuant to 15 U.S.C. §1692e(5).

d. The conduct of Ocwen further constitutes the use of false representation or implication that Plaintiffs committed a crime or other wrongful conduct in order to disgrace, or humiliate them, pursuant to 15 U.S.C. §1692(7).

e. The conduct of Ocwen further constitutes the use of false representation or deceptive means to collect or attempt to collect any

debt, or to obtain information as to its source, authorization, or approval, pursuant to 15 U.S.C. §1692e(10).

f.     The conduct of Ocwen continually refusing information, but continually sending numerous written communication showing haphazard recordkeeping practices and haphazard accounting procedures, knowing that none of the documents made any sense, shows an intent to annoy, abuse, and harass Plaintiffs, and is a violation of 15 U.S.C. §1692(5), particularly because it is questionable whether the Gold's owe, or ever owed Ocwen any money, as any interest alleged by Ocwen in Plaintiffs' property located at 3409 Elm Creek Drive, is not recorded in the Cobb County Georgia Records, or with the State of Georgia, anywhere.

g.     The foregoing violations of §1692 of the FDCPA renders Ocwen liable for statutory damages, costs, and reasonable attorney fees pursuant to §1692k of the FDCPA.

60.   Ocwen violated the FDCPA in the following non-exclusive ways:

a.     By making false, deceptive and misleading representations concerning Ocwen's standing to foreclose on Plaintiffs' loan, when

16

Ocwen is not listed in the chain of title at Cobb County Georgia Records.

b.    Falsely representing the status of Plaintiffs' debt, in particular that it was in default, when in truth and fact, it was not.

c.    Falsely representing, or implying that the debt was owed to Ocwen as a holder in due course or an innocent purchaser for value, or an assignee, or a transferee, when in truth and fact, no assignment, sale or transfer had ever been accomplished, perfected, completed or recorded within the Cobb County Georgia Records.

d.    Threatening to take action, namely engaging in collection activities and collection and foreclosure suits as a secured creditor, that cannot legally be taken by Ocwen as upon information and belief, Ocwen has no right, title, or interest in Plaintiffs' property.

e.    The foregoing violations of of § 1692 of the FDCPA renders Ocwen liable for statutory damages, costs, and reasonable attorney fees pursuant to § 1692(k) of the FDCPA.

f.    As a direct and proximate result of Ocwen's violations of § 1962 of the FDCPA, Ocwen is liable for statutory damages, costs and

reasonable attorney fees to each Plaintiff, pursuant to § 1692(k) of the FDCPA.

## COUNT TWO
### (Negligence)

61.   Plaintiffs incorporate the necessary foregoing paragraphs, by reference, and further allege as follows:

62.   At all times relevant, Ocwen had a duty to act with reasonable care in its dealings with each and both of the Plaintiffs.

63.   Ocwen knew, or should have known that its failure to act with reasonable care in its dealings with each and both of the Plaintiffs would cause them injury and harm, individually, as well as together.

64.   Ocwen failed to exercise reasonable case with respect to the conduct of its employees regarding the collection of loan payments.

65.   Ocwen failed to properly research the Gold's loan history; Ocwen failed to insure that its debt collection efforts complied with Federal or State law; Ocwen prematurely threatened foreclosure against Plaintiffs; and failed to comply with requests for documentation.

66.   Ocwen's conduct was negligent, and directly and proximately caused serious injury to Plaintiffs singularly, as well as collectively.

67.   As a direct and proximate cause of Ocwen's negligence, each Plaintiff has suffered damages and harm, and will continue to so suffer far into the future.

68.   Ocwen negligently injured Plaintiffs separately and together by its conduct, and the conduct of its negligently trained employees.

69.   Ocwen negligently engaged in false, misleading and deceptive collection and accounting practices, Ocwen continually and negligently reported the Gold's account as delinquent or in default on their mortgage loan to consumer credit reporting agencies, when the loan in truth and fact, was not in default; Ocwen negligently threatened Plaintiffs with foreclosure, or caused Plaintiffs to believe their property would be foreclosed upon, causing Plaintiffs to further suffer humiliation, mental anguish and emotional distress, along with fear and fright.

70.   Because the negligence of Ocwen, as set forth above was done recklessly, and was done willfully, wantonly and while knowing the harm and injury to be caused, and the disregard of numerous Federal and State laws, and was done with willful disregard for the rights of Plaintiff's, Mr. and Mrs. Gold are entitled to punitive damages as allowed by Georgia law.

## COUNT THREE
### (Slander of Credit)

71.    At various times, the exact times being currently unknown to Plaitniffs, Ocwen published false, defamatory and libelous report(s) specific to Plaintiff's credit, with Experian, Equifax, Trans Union, and very likely other local regionalized credit reporting bureaus, presently unknown to Plaintiffs.

72.    The false, defamatory and libelous publication(s) specific to Plaintiffs' credit, made by Ocwen, to Experian, Equifax, Trans Union and very likely other credit reporting bureaus presently unknown to Plaintiffs, falsely reported that Plaintiffs were delinquent in their mortgage obligations, when in truth and fact, they were not; and/or falsely reported that Plaintiffs were in default on their mortgage obligations for amounts well in excess of any possible amount actually owed, and said default being expressly denied by Plaintiffs.

73.    Ocwen knew, or in the exercise of reasonable care should have known, that the false publication regarding Plaintiffs' credit would injure and harm Plaintiffs' reputations, adversely affect their ability to obtain credit opportunities in the future, adversely impact the cost of auto

insurance, adversely impact the cost of home insurance, adversely impact the ability to handle family credit emergencies, and adversely impact employment opportunities (existing and future).

74.   False publications regarding Plaintiffs' credit was made with a reckless disregard for the truth and/or with malice and/or with a willful intent to injure Plaintiffs.

75.   As a direct and proximate cause of Ocwen's libelous, defamatory and false publications regarding Plaintiffs' credit, Plaintiffs have suffered damages, in an amount to be proven at the trial of this matter.

76.   Because Ocwen made the false publications of Plaintiffs' credit with a reckless disregard for the truth, and with express knowledge of its falsity and/or with malice, Plaintiffs are entitled to punitive damages as allowed by Georgia law.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs Pray for the following Relief to be granted:

   a. Make a finding of facts and award damages for  all counts stated
      above in favor of Plaintiffs;
   b. Allow Plaintiff's to recover costs, damages (actual and special),
      including but not limited to Attorney's Fees as seen fit by this Court;

c. Determine the false representations and information disseminated by Defendant directly to Plaintiffs regarding Plaintiff's accounting of debt, and award damages in an amount of $210,000 as provided by statute equal to the number of false representations made to Plaintiffs;

d. Determine the false publications, representations and information disseminated by Defendant regarding Plaintiff's credit, and award damages in an amount as provided by statute equal to the number of false representations made by Defendant to third parties;

e. Award compensatory damages to the Plaintiffs for violation of their legal rights;

f. Award the Plaintiffs damages for intentional infliction of emotional distress, humiliation, anxiety, and fear;

g. Grant Plaintiffs relief and damages under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), and the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681 *et seq*. as this Court determines.

h. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 31st day of August, 2012.

Dale A. Calomeni
State Bar No. 105311

CALOMENI & ASSOCIATES, LLC

22

515 East Crossville Road
Bldg 200, Suite 250,
Roswell, GA 30075
Phone: (770)597-6112
Fax: (678) 412-1534
DACalomeni1@bellsouth.net

–

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA,

Atlanta Division

| | |
|---|---|
| MELODY GOLD, | CIVIL ACTION |
| MICHAEL J. GOLD, | FILE NO. 1 : 12-CV-3056 |
| Plaintiffs | |
| v. | JURY TRIAL DEMANDED |
| OCWEN LOAN SERVICING. LLC, | |
| Defendant | |

## **VERIFICATION OF COMPLAINT**

COMES NOW Plaintiffs, MELODY GOLD, and MICHAEL J.

GOLD, being first duly sworn and deposed state the following:

1.) Our affirmative statements of fact contained in the foregoing

Complaint, are true and accurate as to each fact asserted, and the

circumstances that have developed as outlined in the attachment.

1

—

2.) Each fact outlined in the Complaint, is true and accurate to the best of our knowledge and belief.

3.) Each Attachment to the Complaint was received by us, or delivered to our attention by Defendant, OCWEN Loan Servicing, LLC.

**MELODY GOLD**

**MICHAEL J. GOLD**

**State of Georgia**

County of _Cobb_

This instrument was acknowledged before me by **MELODY GOLD, MICHAEL J. GOLD,** on

August _29_, 2012, who first identified themselves to me and I verified their identity by checking

their individual Georgia Driver's Licenses.

**Notary Public's Signature:**                    **[or Notary's Stamp]**

LISA STANSEL
NOTARY PUBLIC
CHEROKEE COUNTY
STATE OF GEORGIA
My Commission Expires Nov. 11, 2015