IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MELODY GOLD,
MICHAEL J. GOLD,

    Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,

    Defendant.

CIVIL ACTION FILE NO.
1:12-CV-03056-JEC-LTW

## MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

This case is presently before the Court on Defendant Ocwen Loan Servicing, LLC's Motion to Dismiss. Docket Entry [8]. For the reasons outlined below, Defendant's Motion to Dismiss should be **GRANTED**. Docket Entry [8].

## DEFENDANT'S MOTION TO DISMISS

### I. Background

Plaintiffs Melody Gold and Michael J. Gold ("Plaintiffs") filed the instant lawsuit against Defendant Ocwen Loan Servicing, LLC ("Defendant" or "Ocwen") on August 30, 2012, for claims arising out of accounting discrepancies and issues with Defendant's servicing of Plaintiffs' mortgage. Docket Entry [1]. In their Verified Complaint, Plaintiffs assert that they are the owners of real property located at 3409 Elm Creek Drive, Marietta, Georgia 30064, as of August 26, 2005. (Compl. ¶ 6). H&R Block Mortgage Corporation was the initial servicer of Plaintiffs' mortgage. (Compl. ¶ 6).

AO 72A
(Rev.8/82)

H&R Block Mortgage Corporation subsequently assigned Plaintiffs' mortgage to Option One Mortgage Corporation on January 13, 2006. (Compl. ¶ 7). The assignment from H&R Block Mortgage Corporation to Option One Mortgage Corporation was recorded in Cobb County in January of 2006. (Compl. ¶ 7).

In November of 2009, Ocwen Loan Servicing, LLC received loan servicing rights for Plaintiffs' mortgage from Option One Mortgage Corporation. (Compl. ¶ 10). Plaintiffs allege that no documentation evidencing the above-referenced assignment was ever filed in the "Cobb County, Georgia Records, or at GSCCCS online" and that Plaintiffs never received any notice of the assignment. (Compl. ¶¶ 9, 11). Plaintiffs believe that their loan was never assigned, sold or transferred to Defendant and if it was, it was never recorded in Cobb County's records. (Compl. ¶ 46-47). Upon receiving payment statements from Defendant starting in November of 2009, Plaintiffs paid the statements and contend that they have never defaulted on their loan. (Compl. ¶¶ 12-13).

From approximately July of 2011 through May of 2012, Plaintiffs allege they received multiple communications and statements from Defendant that reflected inaccurate information including but not limited to, differing principal balance due amounts, invalid accountings of payments made, false cancellation of debt notices, notices regarding an erroneous loan modification, and improper notices of delinquency and default. (Compl. ¶¶ 14-38). Further, Plaintiffs allege that the discrepancies on their mortgage account showed multiple payment credits and reversals, each without merit. (Compl. ¶ 41). Plaintiffs also allege that at various times, Defendant published "false,

defamatory and libelous report(s) specific to Plaintiff's [sic] credit, with Experian, Equifax, Trans Union, and very likely other local regionalized credit reporting bureaus." (Compl. ¶ 71). Throughout the time that Defendant sent all of the above notices of unpaid mortgage amounts and fees, Plaintiffs contend that they have never been behind on their home loan. (Compl. ¶ 40).

When asked to provide a full accounting of their loan, payment reconciliation history or answers to their account inquiries, Plaintiffs assert that they have never received any response from Defendant, but only promises that Defendant would "respond to Plaintiffs' request within twenty (20) days." (Compl. ¶¶ 33-34, 37-39, 48). Plaintiffs contend that though they sent Defendants multiple Qualified Written Request letters, Defendant has failed to respond and has made false representations about the status of Plaintiffs' loan. (Compl. ¶¶ 48, 50). Plaintiffs further allege Defendant is a debt collector as defined in 15 U.S.C. § 1692a(6) and that Defendant was attempting to collect a mortgage debt, "although no debt was owed." (Compl. ¶ 53-54).

In their Verified Complaint, Plaintiffs argue Defendant (1) violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") through "haphazard record keeping," making threats of foreclosure, and falsely representing the character, amount , or legal status of their loan, (2) negligently engaging in false, misleading and deceptive collection and accounting practices and failing to exercise reasonable care toward Plaintiffs with respect to their loan and the collection of loan payments, (3) committing

3

slander through the "false, defamatory and libelous publication(s) specific to Plaintiffs' credit," and (4) inflicting emotional distress, humiliation, anxiety and fear on Plaintiffs.

In Defendant Ocwen's Motion to Dismiss, Defendant contends that Plaintiffs' Verified Complaint should be dismissed because it fails to state a claim for which relief may be granted. More specifically, Defendant argues Plaintiffs' (1) FDCPA claim fails because Defendant is not a debt collector subject to the FDCPA rules; (2) negligence claim fails because Plaintiffs' claim is based on an alleged duty arising from contract and not tort and is thus barred by the economic loss rule; (3) slander of credit claim fails because the heightened pleading requirements for establishing such a claim are not met; and (4) emotional distress claim fails because Plaintiffs were not impacted and do not allege sufficiently extreme or outrageous conduct by Defendant.

## II.  Legal Analysis

### A.  Motion to Dismiss Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). Additionally, the court must draw all reasonable inferences in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). Dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief or it is based on an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford Cnty., 960 F.2d

1002, 1009-10 (11th Cir. 1992). A Rule 12(b)(6) motion to dismiss also tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

To state a claim with sufficient specificity requires that the complaint have enough factual matter taken as true to suggest required elements of the claim. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1296 (11th Cir. 2007); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Factual allegations in a complaint need not be detailed, but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)). A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim when, a complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 569. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

AO 72A
(Rev.8/82)

### B.   Plaintiffs' FDCPA Claim

Plaintiffs contend that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), by using "false, deceptive or misleading representation or means in connection with the collection of any debt allegedly owed by the Plaintiffs." (Compl. ¶¶ 58-88). Defendant argues in its Motion to Dismiss that the FDCPA claim against it should be dismissed because it is not a debt collector as defined under the Act.

Plaintiffs' Verified Complaint fails to state a claim under the FDCPA because Plaintiffs do not plead sufficient facts indicating plausibly that Defendant is indeed a debt collector who should be governed by the Act. The FDCPA was passed in 1977 to regulate the actions of debt collectors in order to protect consumers from unfair debt collection practices. 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors . . . [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged . . . ."); Acosta v. Campbell, 309 F. App'x 315, 320 (11th Cir. 2009). The FDCPA generally precludes "'*debt collectors*' from making false or misleading representations and from engaging in various abusive and unfair practices." Acosta, 309 F. App'x at 320; see also Heintz v. Jenkins, 514 U.S. 291 (1995) (emphasis added).

The Act generally defines the term "debt collector" as "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to

6

collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The statute specifically exempts from the definition of debt collector "any person collecting or attempting to collect a debt owed or due . . . another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). This exclusion has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when the loan was not in default. See Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (holding that the FDCPA definition of debt collector does not include a mortgage servicing company so long as the debt was not in default at the time it was acquired); Frazier v. HSBC Mortg. Servs., Inc., No. 8:08-CV-02396, 2009 U.S. Dist. LEXIS 108930, at *21 (M.D. Fla. Nov. 19, 2009), aff'd on other grounds, 401 F. App'x 436 (11th Cir. 2010) (quoting Perry). As Plaintiffs allege in their Verified Complaint, they have never defaulted or been behind on their loan payments. (Complaint ¶¶ 13, 27). Accepting Plaintiffs' claims above as true that they were not in default when Defendant became their loan servicer, the Court finds that Defendant is not a debt collector as defined under the FDCPA. Therefore, Plaintiffs FDCPA claim (Count One) against Defendant fails and should be **DISMISSED**.

Plaintiffs also contend via exhibits attached to their Verified Complaint that Defendant should be considered a debt collector as contemplated by the FDCPA because various notices from Defendant have a disclaimer that Defendant was acting as

7

AO 72A
(Rev.8/82)


a debt collector attempting to collect a debt. (Compl. ¶¶ 21-23, 36, 39, Exs. 6-9, 20, 22). Under 15 U.S.C. § 1692a(6), there are three ways in which a creditor may be a debt collector for purposes of Section 1692f(6) of the FDCPA: (1) if its principal purpose is to collect debts; (2) if it regularly attempts to collect, directly or indirectly debts owed another; or (3) if the principal purpose of its business is the enforcement of security interests. 15 U.S.C. § 1692a(6); Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1218 (11th Cir. 2012). Plaintiffs aver in their Complaint that H&R Block Mortgage Corporation was the initial servicer of its loan. (Compl. ¶¶ 6-7). Through a series of assignments, recorded or unrecorded[1], the assignees to H&R Block Mortgage,

---

[1] Plaintiffs in their Complaint take issue with Option One Mortgage Corporation's assignment of loan servicing rights to Defendant by arguing that there is no record of an assignment of their loan filed by Defendant in either Cobb County. Specifically, Plaintiffs claim that "there is no Assignment [sic] showing in the Cobb County, Georgia Records, and Plaintiffs never received any communication from the previous servicer relaying such information" regarding Defendant becoming the new loan servicer. (Compl. ¶ 11). It is important to note that in their Verified Complaint, Plaintiffs do not deny that their mortgage was assignable or that Option One Mortgage Corporation had the power to transfer the loan, only that there is no record of the assignment to Defendant being filed as a matter of public record.

Georgia law is clear that security deeds and other mortgage loans are transferrable by way of assignment. See O.C.G.A. § 44-14-64. Georgia law is also clear that it does not require an express written assignment of a security interest. See O.C.G.A. § 44-14-64(b). Moreover, Plaintiffs do not have standing to challenge the assignment from Option One Mortgage Corporation to Defendant because they were not a party to the assignment. See, e.g., Dunn v. BAC Home Loan Servs., L.P., No.1:12-CV-1047-TWT, 2013 U.S. Dist. LEXIS 58270, at *6 (N.D. Ga. Apr. 23, 2013) (citing Haldi v. Piedmont Nephrology Assocs., 283 Ga. App. 322 (2007)); Bandele v. Deutsche Bank Nat'l Trust Co., No. 1:11-CV-4257-TWT, 2012 U.S. Dist. LEXIS 39977, at *6 (N.D. Ga. Mar. 21, 2012) (concluding the plaintiffs did not have standing to challenge the assignment of the security deed because they were not a party to the assignment); Breus v. McGriff, 202 Ga. App. 216, 216 (1991)("[S]trangers to the assignment contract . . . have no standing to challenge its

which include Defendant, were also servicers of Plaintiffs' loan. When Defendant assumed Plaintiffs' loan in 2009, Plaintiffs alleged that they were current on their loan payments, continued paying their loan payments to Defendant and did not begin having issues with Defendant until 2011. (Compl. ¶¶ 12-14). Based on Plaintiffs' own assertions in their Complaint, Plaintiffs fail to allege any specific facts indicating that Defendant, through assignment, was anything more than the servicer of Plaintiffs' loan. Specifically, Plaintiffs failed to present any facts showing that Defendant regularly attempts to collect debts, that the principal purpose of Defendant's business is the collection of debts, or that the principal purpose of Defendant's business is the enforcement of security interests. See Warren v. Countrywide Home Loans, Inc., 342 App'x 458, 460 (11th Cir. 2009). Based on this failure to sufficiently allege such facts, Plaintiffs' FDCPA claim falls short of the mandated standard for establishing Defendant as a debt collector.

Further, even if the Court were to conclude that Defendant was a debt collector because Defendant stated in its notices that it was acting as one to collect alleged outstanding payments on Plaintiffs' mortgage, Plaintiffs' FDCPA claim against Defendant should still be dismissed. As discussed above, based on the facts as Plaintiffs have alleged them, Defendant's actions concerned a debt that was not in default at the time it was obtained by Defendant. Accordingly, Plaintiffs' FDCPA claim against

---

validity."). Consequently, Plaintiffs' assertions alleging invalidity of the assignment of the mortgage from Option One Mortgage Corporation to Defendant lack merit.

Defendant should be **DISMISSED**.

### C. <u>Plaintiffs' Negligence Claim</u>[2]

Plaintiffs allege in their negligence count (Count Two) that Defendant at all times had "a duty to act with reasonable care in its dealings" with Plaintiffs and that Defendant failed in this duty due to (1) the "conduct of its employees regarding the collection of loan payments;" (2) Defendant's failure to "properly research the Gold's [sic] loan history;" (3) Defendant's failure to "insure [sic] that its debt collection efforts complied with Federal or State law;" (4) Defendant's failure to comply with Plaintiffs' requests for documentation; and (5) Defendant's premature threat of foreclosure against Plaintiffs's property. (Compl. ¶¶ 64-65). Plaintiffs further allege that Defendant "negligently engaged in false, misleading and deceptive collection and accounting practices" that caused "Plaintiffs to further suffer humiliation, mental anguish and emotional distress, along with fear and fright." (Compl. ¶ 69).

Plaintiffs, though not clearly pled in Count Two, appear to be alleging that Defendant as a part of its statutory duty under the FDCPA had a duty to treat Plaintiffs with reasonable care while servicing their loan. As outlined above, Defendant is not a debt collector and thus is not governed by the statutory mandates of the FDCPA. Plaintiffs further allege that Defendant, through its negligence, failed to adhere to its

---

[2]Though Plaintiffs label Count Two of their Complaint "Negligence," throughout their allegations, Plaintiffs interchange the legal standards for negligent infliction of emotional distress and intentional infliction of emotional distress, so the Court has addressed Plaintiffs' argument under both legal standards.

duty which caused Plaintiffs emotional distress. Plaintiffs have failed to state a cause of action for negligent infliction of emotional distress based on the fact that Georgia recognizes no such cause of action. See S & W Seafoods Co. v. Jacor Broadcasting of Atlanta, 194 Ga. App. 233, 237 (1989) (citing Hamilton v. Powell, Goldstein, Frazier, & Murphy, 252 Ga. 149 (1984)). The Courts have been clear that the only way a plaintiff who brings a negligence claim can recover for mental pain and suffering is when the emotional distress was accompanied by "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." Lee v. State Farm Mutual Ins. Co., 272 Ga. 583, 586 (2000); Cornelius v. Bank of America, N.A., No. 1:12-CV-0585-JEC, 2012 U.S. Dist. LEXIS 139173, at *12 (N.D. Ga. September 27, 2012) ("there is no . . . independent tort [for negligent infliction of emotional distress] under Georgia law[,] . . . [i]nstead, Georgia adheres to the 'impact rule,' which only permits recovery for emotional distress caused by negligent conduct where plaintiff has suffered a physical injury"). Plaintiffs have not alleged that they suffered any physical injury or impact, nor is such an impact or injury plausible given the factual allegations as they currently stand. Plaintiffs' negligence claim should therefore be **DISMISSED**.

Plaintiffs also allege that Defendant's servicing of their loan was "done recklessly...willfully, wantonly and while knowing the harm and injury to be caused," such that Plaintiffs suffered "humiliation, mental anguish and emotional distress, along

with fear and fright." (Compl. ¶¶ 69-70). In response, Defendant argues Plaintiffs fail to satisfy the pleading standards established by Georgia law because negligent or erroneous servicing of Plaintiffs' loan does not equal extreme or outrageous conduct. (See Def's. Mot. to Dismiss, Dkt. [8] at 5-7).  As outlined below, Plaintiffs' claim for intentional infliction of emotional distress ("IIED") also fails.

Under Georgia law, in order to prevail on an IIED claim, Plaintiffs must allege Defendant's conduct was: "(1) intentional or reckless; (2) extreme and outrageous; and (3) the cause of severe emotional distress." Wilcher v. Confederate Packaging, Inc., 287 Ga. App. 451, 453 (Ga. Ct. App. 2007); Carroll v. Bank of Am., N.A., No. 1:12-CV-02506-RWS, 2013 U.S. Dist. LEXIS 44236, at *13-14 (N.D. Ga. Mar. 28, 2013). Liability for intentional infliction of emotional distress has been found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Farrell v. Time Service, Inc., 178 F. Supp.2d 1295, 1299 (N.D. Ga. 2001) (quoting Biven Software, Inc. v. Newman, 222 Ga. App. 112, 113-14 (1996)); Cornelius v. Auto Analyst, Inc., 222 Ga. App. 759, 762 & n.2 (1996)(Where defendant sent a letter threatening plaintiff with arrest if he did not pay the debt owed to defendant, the court stated that while not approving the defendant's conduct, there was no cause of action for intentional infliction of emotional distress).  Though Plaintiffs outline accounting discrepancies that were no doubt frustrating and an annoyance to deal with, Plaintiffs do not allege conduct by Defendant that rises to the





level of "outrageous in character" and "extreme in degree" to support their IIED claim. Instead of outlining such sufficiently extreme and outrageous conduct, Plaintiffs instead make conclusory statements reciting the elements of the cause of action. (See Compl. ¶70). Such statements do not satisfy the requirements of Rule 12(b)(6). Accordingly, Plaintiffs' claim for IIED should be **DISMISSED**.

### D.    Plaintiffs' Slander of Credit Claim

Plaintiffs lastly assert a claim for slander of credit (Count Three) based on Defendant's alleged communication of false information regarding their payment history to the credit reporting agencies. (Compl. ¶ 71). O.C.G.A. § 51-5-1 defines libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." In Georgia, the definition of slander has been incorporated into the definition of libel. See Hayes v. Irwin, 541 F. Supp. 397, 431 n.34 (N.D. Ga. 1982), aff'd, 729 F.2d 1466 (11th Cir. 1984).

Plaintiffs' Verified Complaint is extremely ambiguous regarding whether their slander allegations are based on the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., as it is not pled in Count Three.[3] Regardless, the FCRA has limited,

---

[3] Plaintiffs in the "Jurisdiction and Venue" and "Prayer for Relief" sections of their Verified Complaint contend that their lawsuit partially arises out of violations of the FCRA, but fail to provide or identify the nature or any explanation of their legal theory, along with the relevant supporting facts, as to how the Act was violated. (Compl. ¶ 1 and Prayer for Relief). Moreover, Plaintiffs mention the FCRA in Plaintiff's [sic] Responsive Objections To Motion To Dismiss, but do not address the merits of their argument. See Pls. Resp. To Mot. Dismiss, Dkt. [10] at 15-16.

13

through preemption, certain state-law causes of action. 15 U.S.C. § 1681h(e). Specifically, the FCRA outlines that "no consumer may bring any action or proceeding in the nature of defamation...with respect to the report of information against...any person who furnishes information to a consumer reporting agency...except as to false information furnished with malice or willful intent to injure such consumer." Lofton-Taylor v. Verizon Wireless, 262 F. App'x 999, 1002 (11th Cir. 2008) (citing 15 U.S.C. § 1681h(e)). Therefore, Plaintiffs must show that Defendant's inaccurate or erroneous reporting was done with "malice or willful intent to injure." Id.

Under Georgia law, malice is defined as a statement made "with knowledge that it was false or with reckless disregard of whether it was false or not." Hunt v. Liberty Lobby, 720 F.2d 631, 642 (11th Cir. 1983) (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)). Plaintiffs fail to state a claim for slander because they have not alleged any oral statement by Defendant to the third parties credit reporting agencies. See O.C.G.A. § 51-5-4(a) (slander includes "uttering any disparaging words productive of special damage which flows naturally therefrom"). Plaintiffs fail to state a claim for

---

Accordingly, the Court views this claim as abandoned and failing to plausibly state a claim for violations of the FCRA. Plaintiffs' FCRA claim should thus be dismissed. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) (stating that claims that have not been briefed are deemed abandoned and their merits will not be addressed); Outlaw v. Barnhart, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding that plaintiff waived issue regarding physical exertional impairments despite listing issue in brief where plaintiff "did not elaborate on this claim or provide citation to authority about this claim") (citing Cheffer v. Reno, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim).

defamation based on libel because they failed to allege facts showing that Defendant made any false written statements to these third parties with malice. See Stroman v. Bank of Am. Corp., 852 F. Supp. 2d 1366, 1377-78 (N.D. Ga. 2012). Georgia courts have required a plaintiff to allege facts indicating actual malice in order to recover for libel, meaning that the "allegedly defamatory matter was uttered with knowledge that it was false or reckless disregard for whether it was true or false." Hammer v. Slater, 20 F.3d 1137, 1142 (11th Cir. 1994). Reckless disregard for the truth or falsity is shown when a defendant "entertained serious doubts as to the truth of his publication." Id. Though Plaintiffs assert that Defendant reported inaccurate and/or false information to the credit reporting bureaus, Plaintiffs fail to present evidence to suggest that Defendant's actions were made maliciously or with the specific intent to injure the Plaintiffs. Accordingly, Plaintiffs slander of credit claim should be **DISMISSED.**

### F.  Plaintiffs' Motion for Leave to Amend

In Plaintiff's [*sic*] Responsive Objections to Defendant's Motion to Dismiss, Plaintiffs contend that they should be permitted to amend their Complaint because "should the Court agree with defendant, rather than Dismiss [*sic*] the case....Plaintiffs [should] be allowed to Amend [*sic*] their Complaint." Docket Entry [10]. Defendant opposes Plaintiffs' Motion to Amend. Docket Entry [11]. In the Eleventh Circuit, the proper method to request leave to amend a complaint is to make "[a]n application to the court for an order . . . by motion, . . . in writing, . . . stat[ing] with particularity the grounds therefore, . . . [and either setting] forth the substance of the proposed

amendment or [attaching] a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999) (finding that district court did not abuse its discretion in denying leave to amend complaint when request for leave to amend was included in opposition to motion to dismiss and plaintiff did not set forth the substance of the proposed amendment). Because Plaintiffs did not provide a proposed Amendment or further describe the substance of their desired amendments, Plaintiffs' Motion to Amend is **DENIED**. Docket Entry [10].

## CONCLUSION

For the reasons stated above, this Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED**. Docket Entry [8].

**SO ORDERED and REPORTED AND RECOMMENDED**, this 31 day of May, 2013.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)